IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 1:24-cv-01760-SKC

NORA BASS, individually, and as personal representative of the ESTATE OF HANS VON OHAIN, deceased; and R.V.O., a minor, who proceeds by her next friend and natural guardian NORA BASS.

Plaintiffs,

v.

TESLA, INC.; and DOES 1 to 25, inclusive,

Defendant.

---

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO AMEND SCHEDULING ORDER AND FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

---

## INTRODUCTION

Tesla's opposition asks the Court to decide this case on a pleading trap rather than the merits.

This case still concerns the same vehicle, same crash, same post-collision fire, same entrapment, and same death. Plaintiffs are not adding a new accident, product, injury, or defendant. Plaintiffs are doing what Rule 11 required: withdrawing an unsupported Autopilot defect theory and seeking leave to plead the defect theories supported by the technical evidence as it developed.

The closest controlling authority is *Minter v. Prime Equipment Co.*, 451 F.3d 1196 (10th Cir. 2006). There, a products plaintiff sought to proceed on a refined product-defect theory after discovery changed the factual picture. The Tenth Circuit reversed the district court's refusal to allow the theory, emphasizing that lateness alone does not defeat amendment and that the key issue is actual undue prejudice—not whether the amended theory differs from the original theory. *Id.* at 1204–09.

*Dymnioski v. Crown Equipment Corp.*, No. 11-3696, 2012 WL 1986584 (D.N.J. June 4, 2012), confirms the same point in a products case. The court criticized the plaintiff's delay in clarifying a forklift design-defect theory, but still granted amendment because the defendant could not show undue prejudice, discovery could still accommodate the amendment, and terminating the case would be too harsh. *Id.* at *6–8.

That is this case. Tesla identifies no lost witness, no lost evidence, no expired

trial date, and no defense it can no longer present. Its prejudice argument is that it spent resources attacking the abandoned Autopilot theory and would rather not litigate the defect theories the evidence now supports. That is not undue prejudice. That is merits litigation.

Tesla's principal case, *Browder v. General Motors Corp.*, 5 F. Supp. 2d 1267 (M.D. Ala. 1998), does not compel a different result. *Browder* is nonbinding, predates *Minter*, and involved a materially different record: serially shifting theories, exhausted discovery and expert deadlines, and a plaintiff who repeatedly moved from component to component after experts could not substantiate earlier theories. This case is different. Plaintiffs seek a ***first*** amendment; no trial date has been set; expert and dispositive deadlines were extended because both sides told the Court the technical evidence was difficult and could affect the direction of the case, which it has; and Plaintiffs circulated the proposed FAC ***before*** Tesla filed summary judgment. The motion should be granted.

## ARGUMENT

### I. *Minter* and *Dymnioski* Confirm that Amendment is Proper Where a Products Plaintiff Refines a Defect Theory Based on Developed Evidence, and the Defendant Cannot Show Actual Undue Prejudice.

Tesla argues that Plaintiffs seek to replace one product-defect theory with another. But that is not enough to deny amendment.

In *Minter*, the plaintiff was injured after falling from a scissor lift. 451 F.3d at 1199–1201. The complaint did not expressly plead an alteration-based product-liability claim against Prime Equipment. *Id.* at 1202. Near trial, however, the

plaintiff sought to proceed on the theory that Prime Equipment had materially altered the lift by removing a solid guardrail safety feature. *Id.* at 1204. The district court struck the theory as untimely and prejudicial. *Id.* at 1205. The Tenth Circuit *reversed*, holding the theory should have been allowed even assuming it had not been properly pled before the proposed pretrial order. *Id.* at 1206, 1209.

*Minter* controls this analysis in two ways. First, "lateness does not of itself justify the denial of the amendment." *Id.* at 1205. The question is whether the movant has an adequate explanation for the timing. *Id.* at 1206. Plaintiffs do. This was a technically difficult products case involving fire-damaged electronic evidence, a destroyed vehicle, multiple expert disciplines, and evolving analysis. Both sides jointly told the Court exactly that when they requested the August 2025 scheduling extension. [Dkt. No. 39.] The Court then extended expert and dispositive deadlines.

Second, prejudice is the central inquiry. Rule 15 is designed to facilitate amendment "except where prejudice to the opposing party would result." *Minter*, 451 F.3d at 1207. Prejudice generally exists only when the amendment unfairly impairs the defendant's ability to prepare its defense. *Ibid.* It is not enough to say "the case has changed"; the defendant must show real impairment.

*Dymnioski* confirms the same point. There, the original complaint alleged only generalized product-defect theories regarding a forklift. 2012 WL 1986584, at *1–3. The plaintiff later amended to allege specific design defects concerning the operator compartment. *Id.* at *3–4. The court criticized plaintiff's delay and expressly found "no valid reason" for it. *Id.* at *6. But it still granted amendment

because the defendant had not shown it would be unable to present facts or evidence it otherwise would have presented, expert discovery was not complete, and terminating the case would be too harsh. *Id.* at *7–8.

Plaintiffs' showing is stronger than the showing in *Dymnioski*. Plaintiffs did not leave Tesla guessing. Plaintiffs expressly told Tesla in October 2025 that they were not pursuing Autopilot. Plaintiffs then circulated the proposed FAC ***before*** expert disclosures and ***before*** Tesla filed summary judgment. And the technical-development process was not incidental—it was the reason both sides jointly requested the schedule extension. [Dkt. No. 39.]

The Federal Rules do not make pleading a game of "gotcha." *Minter* emphasized that the Rules were designed to end the "sporting theory of justice." 451 F.3d at 1209. *Dymnioski* applied the same practical rule, explaining that the purpose of pleading is to facilitate a proper decision on the merits, not to make one pleading misstep decisive. 2012 WL 1986584, at *8. That principle governs here. Tesla knew Plaintiffs had withdrawn Autopilot. Tesla knew the case involved a fatal crash followed by fire and entrapment. Tesla knew technical evidence could affect the case direction because Tesla jointly told the Court so. Tesla cannot convert Plaintiffs' responsible withdrawal of one unsupported theory into dismissal of the entire case.

## II. The Expert Record Underscores Good Cause for Why the Amended Theories Developed Later.

Neither party required discovery to learn that the Model 3 had doors, a low-voltage system, or a high-voltage battery propulsion system. But Plaintiffs did need

discovery and expert analysis to determine whether those systems failed in this crash, whether any such failure caused or contributed to Mr. Von Ohain's death, and whether those theories could responsibly be alleged consistent with Rule 11.

Mr. Heer's report explains that the fire-damaged RCM could not be imaged through standard methods. Instead, the RCM data had to be recovered through a September 3, 2025 "chip swap" at Exponent's Menlo Park facility. That later-recovered data supplied crash-event information—including Delta-V, crash pulse, pre-crash speed, braking, steering, and vehicle-dynamics information—necessary to analyze crash severity, occupant survivability, and the causal significance of the post-impact fire and failed egress. [See Dkt. No. 46-2: Heer Rep., pp. 3, 8–10.]

The physical and engineering analysis also developed later. Mr. Heer inspected the subject Tesla and crash site in March 2026, and used the vehicle inspection, crash-site inspection, photographs, 3D scan data and recovered EDR data to tie the crash geometry to the since-refined and proposed defect theories. That analysis showed the front tree impact drove the front motor rearward, intruded into the firewall, involved the location of the 12-volt battery, and likely destroyed the 12-volt battery and/or severed its circuitry. That disabled the low-voltage electrical system and rendered the electromechanical door switches and windows inoperable, trapping the decedent alive inside despite his passenger friend's desperate attempts to extricate him through the unpowered/inoperable exterior electromechanical door handle. [Heer Rep., pp. 3–6.]

Dr. Stichter's report confirms the same point from the battery/fire and design-defect perspective. He participated in the March 2026 vehicle inspection, where further photographs and point-cloud data were generated. Based on thermal damage and consumption of combustible materials, he identified the fire-origin area as the region of the high-voltage battery module where the front motor intruded. [See Dkt. No. 46-1: Stichter Rep., pp. 4–5.] He also evaluated Tesla-produced testing and design materials and explained that they did not document battery damage in the way necessary to evaluate this real-world crash mechanism. [Stichter Rep., pp. 18–19.]

That is the adequate explanation Tesla says is missing. Plaintiffs did not sit on a fully formed replacement theory. The door/egress, low-voltage, and battery/fire theories emerged through recovery of fire-damaged electronic data, vehicle and site inspections, low-voltage failure analysis, high-voltage battery intrusion/fire analysis, and review of Tesla's produced testing and design materials.

## III. Tesla Cannot Show Undue Prejudice, and *Browder* is Distinguishable.

Tesla says amendment would "restart" the case, but the underlying incident has not changed. The vehicle, crash, fire, entrapment, and death are the same. What changed is the defect theory as the technical evidence developed. That is not undue prejudice. It is the ordinary function of discovery in a technically complex products case.

Nor is Tesla unfairly surprised. Tesla has known since October 2025 that Plaintiffs were not pursuing Autopilot. Tesla knew before that—by its own joint filing—that the damaged electronic evidence and technical work could affect the case direction. And Tesla received the proposed FAC ***before*** expert disclosures and ***before*** filing summary judgment. No trial date has been set.

Tesla's real complaint is that it would prefer to defend only against the abandoned Autopilot theory. That preference is not prejudice. Under *Minter*, the question is whether amendment would unfairly impair Tesla's ability to defend on the merits. (451 F.3d at 1207.) Tesla has not shown that.

Nor is Tesla's claimed sunk cost enough. The Tenth Circuit has made clear that "the expenditure of time, money, and effort alone is not grounds for a finding of prejudice." *Bylin v. Billings*, 568 F.3d 1224, 1230 (10th Cir. 2009). Tesla does not identify disappeared evidence, unavailable witnesses, a lost trial date, or any dispositive or expert deadline that cannot be managed under the current schedule or through targeted adjustment. At most, Tesla may need to address the defect theories Plaintiffs actually intend to pursue. That is not unfair. That is litigation.

*Dymnioski* makes the same point. The defendant there argued prejudice from plaintiff's late clarification of the forklift design-defect theory. (2012 WL 1986584, at *7–8.) The court acknowledged delay and cost, but held there was no *undue* prejudice because the defendant had not shown it would be unable to present facts or evidence it otherwise would have presented, and discovery could still accommodate the amendment. *Id.* at *8.

Tesla's reliance on *Browder* fails. *Browder* is nonbinding; *Minter* controls; and *Browder* involved exhausted discovery and expert deadlines, and a plaintiff who moved from component-to-component theory after experts could not substantiate earlier theories. *Browder*, 5 F. Supp. 2d at 1284.

That is not this case. Plaintiffs are not serially shifting from one unsupported component theory to another. Plaintiffs withdrew Autopilot when it no longer had evidentiary support and sought leave to plead door/egress, low-voltage, and battery/fire theories supported by ongoing expert analysis. This is Plaintiffs' ***first*** amendment. Plaintiffs did not wait until trial. No trial date exists. And the amendment follows the parties' joint representation that technical evidence remained difficult, damaged, and potentially case-directive.

Tesla's *Browder* argument proves too much. If accepted, it would mean that a products plaintiff who responsibly withdraws one unsupported defect theory after technical discovery is forever barred from pleading a theory arising from facts discovered during the course of litigation and based arising out of the same product incident. Tesla should not be permitted to jointly obtain a schedule extension on the ground that developing technical evidence may affect the case, then later claim unfair surprise when that evidence does exactly that.

## IV. The Amendment Relates Back and is Not Futile.

Rule 15(c)(1)(B) asks whether the amendment arises out of the "conduct, transaction, or occurrence" set out—or attempted to be set out—in the original pleading. The Tenth Circuit applies that standard practically: an amendment

relates back where it is grounded in the same "nucleus of operative facts" as the original pleading. *Gilles v. United States*, 906 F.2d 1386, 1390 (10th Cir. 1990).

That standard is satisfied here. The nucleus of operative facts has never changed: the May 16, 2022, crash, the same 2021 Tesla Model 3, the same post-collision fire, the same entrapment, and the same death from smoke inhalation and thermal injury. The proposed FAC does not seek recovery for a different accident, vehicle, product, injury, or defendant. It concerns the same fatal event.

Tesla argues the original Complaint did not use words like "battery," "door," "latch," or "low voltage." But Rule 15(c) is not a word-search exercise. The question is whether Tesla had fair notice of the general factual situation giving rise to Plaintiffs' claims. It did. The original Complaint alleged that the Model 3 left the roadway, struck a tree, burst into flames, and that Mr. Von Ohain died from the resulting event. The proposed FAC refines the defect mechanisms by which Tesla's vehicle design caused or contributed to that same fatal outcome. It changes the theory of defect; it does not change the operative occurrence.

## V. Tesla's Request for Fees or Sanctions Should be Denied.

Tesla's alternative request for fees or sanctions is procedurally defective and substantively baseless. Rule 11 provides no basis for relief. Tesla did not file a separate Rule 11 motion, comply with Rule 11's 21-day safe-harbor procedure, or serve the motion itself before seeking sanctions. See Fed. R. Civ. P. 11(c)(2); *Roth v. Green*, 466 F.3d 1179, 1191–93 (10th Cir. 2006). Tesla cannot obtain Rule 11 sanctions through an alternative request embedded in an opposition brief.

Rule 41 also does not apply. This is not a case where Plaintiffs voluntarily dismissed an action and then filed duplicative litigation, requiring Tesla to incur repeat litigation costs. Plaintiffs seek leave to amend in the same action so the case may proceed on the defect theories supported by the developed evidence. Nor has Tesla shown bad faith sufficient to invoke the Court's inherent power. Inherent-power fee shifting is reserved for litigation abuse—fraud on the court, vexatious conduct, wanton conduct, or conduct undertaken for oppressive reasons. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). It is not triggered by an ordinary dispute over whether a first amended complaint should be allowed.

There is no bad faith here. Plaintiffs withdrew the Autopilot theory when the evidence no longer supported it, continued evaluating what claims could responsibly be asserted consistent with Rule 11, and circulated a proposed FAC and stipulation before Tesla filed summary judgment. Tesla's request for fees or sanctions should be denied.

## CONCLUSION

Plaintiffs have shown good cause under Rule 16 and satisfy Rule 15's liberal amendment standard. The proposed FAC concerns the same vehicle, same crash, same fire, same entrapment, and same death. Tesla had notice of the evolving technical issues, cannot show concrete prejudice, and has no procedural or substantive basis for fees or sanctions.

The Court should grant Plaintiffs' Motion, modify the Scheduling Order, and allow Plaintiffs to file the First Amended Complaint.

Dated: May 4, 2026

Jonathan A. Michaels
Travis R. Eagan
MLG Attorneys at Law,
APLC 600 Anton Blvd., Ste.
1200 Costa Mesa, CA 92626
Telephone: 949. 581. 6900
Email:
jmichaels@defectattorney.com
teagan@defectattorney.com
*Attorneys for Plaintiffs,*
Nora Bass, individually, and as personal representative of the Estate of Hans Von Ohain, deceased; and R.V.O., a minor, who proceeds by her next friend and natural guardian Nora Bass, an individual.

**CERTIFICATE OF SERVICE**

I, Jennifer Neri, caused Plaintiffs' Reply In Support Of Motion To Amend Scheduling Order And For Leave To File First Amended Complaint to be served upon all counsel of record in this case.

Dated: May 4, 2026

Jennifer Neri